IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 1:08cr12 |
| ) | |
| LINDA WOOLF and ) | |
| DAVID GENGLER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' motion for a mistrial based on alleged violations of the Government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C. § 3500, made on the second day of the trial in this case.

Defendants' motion stems from the Government's fourth production of Jencks material to Defendants. This production occurred on the evening of April 13, 2009, after the first day of the trial in this case had concluded. Two of the entries on the index of the Government's production relate to Betty Lowder, a witness who had testified and been cross-examined on the first day of the trial. The two entries at issue are: 4/12/2009 Betty Lowder Seminar Notes and 4/12/2009 Betty Lowder MOI. Defendants contend that material in these two entries was subject to disclosure under *Brady* and its progeny as well as the Jencks Act. Defendants contend that a mistrial is warranted since the government called Betty Lowder, examined her, allowed cross-examination to take place and allowed her to be excused, all without either producing the documents that were eventually produced the evening of April 13, 2009, or without advising the Court or Defendants that such material would be forthcoming.

Whether to grant a motion for mistrial is left to the broad discretion of the trial court. *See, e.g., United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997) ("denial of defendant's

motion for mistrial is within the sound discretion of the district court"). "Before granting a mistrial, the court should always consider whether the giving of a curative instruction or some alternative less drastic than a mistrial is appropriate." *United States v. Martin*, 756 F.2d 323, 328 (4th Cir. 1985).

The Court has reviewed the index of the Government's production marked as Defendant's Exhibit WX-705 and the Memorandum of Interview ("MOI") regarding Betty Lowder marked as Defendant's Exhibit WX-704. With respect to Defendants' contention that they did not receive the Seminar Notes listed on the index, the Government informed the Court and Defendants that the reference to Seminar Notes was incorrect and that the entry should have stated "Betty Lowder Seminar Receipt." Defendants acknowledged that they received a copy of Betty Lowder's Seminar Receipt.

The remaining dispute relates to the Betty Lowder MOI. The MOI was prepared by United States Postal Inspector Kevin Towers on April 13, 2009, following an interview of Betty Lowder conducted by Agent Towers and Assistant United States Attorney Derek Andreson on April 12, 2009. The interview occurred on the day before the trial in this case began.

Defendants' first contention is that pursuant to the Jencks Act, the MOI should have been produced to Defendants after Betty Lowder testified on direct examination. The Jencks Act provides that after a witness called by the government has testified on direct examination, the court must grant a motion to produce "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The Act defines "statement" to include a written statement "signed or otherwise adopted or approved" by the witness as well as a "recording" of a witness' oral statement that is a "substantially verbatim recital." 18 U.S.C. § 3500(e). As the Supreme Court explained in *Palermo v. United States*, only witness statements "which could properly be called

2

the witness' own words" and "reflect fully and without distortion what had been said to the government agent" are producible under the Jencks Act. 360 U.S. 343, 352 (1959). Thus, "[w]hile a statement need not have been written or signed by the witness, if the statement is not the witness' actual words, it must in some way have been adopted or approved by the witness to qualify as Jencks material." *United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996). Even where a government agent takes contemporaneous notes during an interview, the notes do not become the witness' statements for purposes of the Jencks Act if the agent "does not read back, or the witness does not read, what the [agent] has written." *Id.* (quoting *Goldberg v. United States*, 425 U.S. 94, 110-11 n.19 (1976)); *see also Palermo*, 360 U.S. at 352.

On cross-examination, Defendants established that Betty Lowder met with AUSA Andreson the day before she testified and that AUSA Andreson took notes during the interview. Betty Lowder further testified that she did not review AUSA Andreson's notes. Thus, there is no evidence that AUSA Andreson, or Agent Towers, read any of their notes back to Betty Lowder or that Betty Lowder otherwise adopted what had been written. Nor is there any indication that AUSA Andreson or Agent Towers made or attempted to make a verbatim record of the interview. The MOI is approximately one and one-half pages long and after careful review the Court finds that it cannot "properly be called [Betty Lowder's] own words." *See Palermo*, 360 U.S. at 352; *Roseboro*, 87 F.3d at 646. Accordingly, the Court finds that the Betty Lowder MOI is not a Jencks Act statement.

Defendants' second contention is that the MOI is *Brady* material. Under *Brady* and its progeny, the Supreme Court has held that the failure to disclose evidence favorable to the accused violates due process only "where the evidence is material either to guilt or punishment." *Brady*, 373 U.S. at 87. Evidence is material where "its suppression undermines the confidence in the outcome of the trial", that is, where "there is a reasonable probability that, had the evidence

3

been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 678 (1985); *see also Strickler v. Greene*, 527 U.S. 263 (1999); *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995).

While the prosecutor's role encompasses a "broad duty of disclosure," "not every violation of that duty necessarily establishe[s] that the outcome was unjust." *Strickler*, 527 U.S. at 281. To prove a *Brady* violation, a defendant must show that non-disclosed evidence was (1) favorable to the defendant; (2) material; and (3) that the prosecution had the materials and failed to disclose them. *United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001), *cert. denied*, 535 U.S. 990 (2002); *see also Strickler*, 527 U.S. at 280.

Here, the questions to be resolved by the Court are whether the MOI is, in fact, impeachment or exculpatory evidence within the meaning of *Brady* or *Giglio v. United* States, 405 U.S. 150 (1972), and whether any impeachment or exculpatory evidence contained in the MOI is material. After reviewing the witness' trial testimony and the MOI, the Court does not find any material inconsistencies between the MOI and Betty Lowder's trial testimony. Defendants, however, contend that because the MOI does not reference any statements by Defendant Woolf regarding a 96% success rate, the MOI is impeachment or exculpatory evidence.

As the Government argued, the fact that the MOI does not contain any reference to a 96% success rate does not mean that the witness did not hear Defendant Woolf reference a 96% success rate. Moreover, as discussed above, the MOI is not a verbatim transcript of the witness' statements during her interview with Agent Towers and AUSA Andreson. Thus, the absence of such reference in the MOI does not exclude the possibility that during the interview the witness mentioned hearing Defendant Woolf refer to a 96% rate. Defendants contend that they were nonetheless deprived of the opportunity to cross-examine Betty Lowder regarding whether she

mentioned the 96% success rate during the April 12, 2009 interview and, if she did not, the reasons for and implications of her silence.

The Court concludes that the MOI does not on its face contain exculpatory evidence. The Court also concludes that the MOI does not clearly contain impeachment evidence, particularly given the witness's unclear testimony regarding Defendant Woolf's reference to a 96% success rate. Moreover, the witness' reference to a 96% success rate was within the context of another statement that was referenced in the MOI; specifically, that the witness recalled hearing Defendant Woolf reference that you could make $100,000 the first year. The Court acknowledges, however, that in certain circumstances a witness' prior silence may be used to impeach that witness.

Even if the MOI can properly be viewed as exculpatory or impeachment evidence, it must also be material to amount to a *Brady* violation. *See, e.g., Strickler*, 527 U.S. at 280; *United States v. Agurs*, 427 U.S. 97, 104 (1976). The materiality inquiry is:

> not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Strickler*, 527 U.S. at 290 (internal citations omitted).

As discussed above, the Court does not find any significant inconsistencies between the MOI and the witness' trial testimony, such that the absence of a reference to a 96% success rate does not "put the whole case in such a different light as to undermine confidence in the verdict." *Id.* The fact that the MOI does not mention a 96% success rate does not establish or even strongly suggest that Defendant Woolf never mentioned a 96% success rate at the course attended by the witness. Moreover, Betty Lowder did not attend one of the seminars that is the basis of the substantive wire fraud counts in the indictment and there is other evidence in the

record regarding statements made by the Defendants and students recollections of those statements. The Court also does not believe that the absence of a reference to a 96% success rate in the MOI would have likely made any difference in the credibility of the witness.

With respect to the timing and manner of the Government's production, the Government stated that it made every effort to get the production to Defendants in a timely fashion, but that since the interview had taken place the night before the first day of trial, the MOI was not completed until some time on the first day of trial. The Court nonetheless must caution the Government to ensure that its productions are made prior to defendant's cross-examination of a government witness to which the production relates. At a minimum, the Government should alert the Court and defendant that there is producible material that the Government is not yet in a position to produce.

Although the Court concludes that the Betty Lowder MOI does not appear to be either Jencks material or *Brady* or *Giglio* material, the Government nonetheless chose to produce the MOI to Defendants. Given the timing of the production, Defendants may recall Betty Lowder to cross-examine her further on the basis of the information contained in the MOI.

Accordingly, for the reasons stated above, the Defendants' motion for a mistrial is denied.

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 27, 2009