IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LINDA WOOLF, and<br>DAVID GENGLER,<br><br>Defendants. | Criminal No.  1:08cr12<br><br>Honorable Anthony J. Trenga |

**DEFENDANTS' JOINT SUPPLEMENTAL MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL AND
<u>SUPPORTING MEMORANDUM OF LAW</u>**

NOW COMES Counsel for Defendants Linda Woolf and David Gengler and respectfully submit the following supplemental memorandum of law in support of Defendants' Motion for Judgment of Acquittal, pursuant to Federal Rule of Criminal Procedure 29.[1]

Rule 29 provides that "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  In a case such as that presented against David Gengler and Linda Woolf, where there is no evidence of the commission of a crime, let alone evidence sufficient to support the instant charges, the Court must grant the Motion of Judgment of Acquittal.

---

[1] David Gengler and Linda Woolf have previously filed a Joint Memorandum in Support of Motion of Judgment of Acquittal and a Joint Supplemental Memorandum in Support of Motion for Judgment of Acquittal which is incorporated herein.  In the interests of justice, in particular the significant record in this matter of prosecutorial misconduct and the underlying absence of criminal conduct, Mr. Gengler and Mrs. Woolf, in the alternative seek a New Trial under Federal Rule of Criminal Procedure 33.

1

David Gengler and Linda Woolf taught legal and legitimate seminars as independent contractors working for a publicly traded company that provided educational courses in stock market and real estate investment. For their involvement with Teach Me To Trade ("TMTT"), Mrs. Woolf and Mr. Gengler were charged with Conspiracy to Commit Wire and Mail Fraud and three (3) counts each of Wire Fraud.[2]

## THE GOVERNMENT DID NOT OFFER ANY EVIDENCE THAT THE STATEMENTS MADE WERE MISSTATEMENTS

In attempting to establish the existence of a conspiracy and the substantive wire fraud counts, the government relied on a theory that was inherently flawed in its inception. The government argued that the defendants fraudulently induced students to purchase products that they would not have otherwise purchased by making allegedly material misrepresentations to the students. The government, however, did not charge the defendants with engaging in fraud in the inducement. Nor could such a charge have been brought. Instead Mr. Gengler and Mrs. Woolf were charged with mail and wire fraud which requires a "scheme" to "defraud" as key elements.

The government did not and could not prove either a "scheme" or a "fraud." To the contrary, TMTT, its products and its employees were all involved in the legal sale of goods in the public marketplace. These sales were made employing formal contracts which permitted refunds and replacements for its students should they request them, and, once a sale was completed, TMTT acted in good faith in providing the courses sold to its students. No one testified to the contrary.

Because the government could not establish that the products sold were fraudulent in any way, it focused instead on the alleged misstatements by Mr. Gengler and Mrs. Woolf. The

---

[2] The Court has already properly dismissed four (4) Wire Fraud counts against each Mrs. Woolf and Mr. Gengler.

evidence at trial, however, never proved beyond a reasonable doubt that these statements were materially false or were anything other than personal anecdotes of Mr. Gengler and Mrs. Woolf which they were led to believe by TMTT were appropriate and certainly not criminal. The government presented a case that was premised on the theory that those statements were false, yet never offered evidence of their falsity.

Indeed, a striking example is the government's use of the TMTT "96.5% success rate," as a way to impugn Mr. Gengler and Mrs. Woolf. While the government scoffed at the statistic, called it in to question as being implausible at every opportunity and derided those who could have relied its accuracy, when it came down to evidence, lead investigator Special Agent Joann Altenburg summed it up best when asked if the "96% success rate" was true, when she said "I do not know," and that it was too vague to confirm.

Similarly, the government spent countless hours attacking the mentor program and the student testimonials, yet never offered any evidence to prove that the mentor program itself was a fraud.[3] Even the mentor Gerry Adams, who testified for the government under a grant of immunity, and who, at worst, exaggerated his own personal qualifications, was a "successful trader" who saw yearly gains of over 17% each of the three years he mentored, following his completion of the TMTT program.[4] Indeed, several students who testified, including Jessica Lahr, were very pleased with the mentoring Mr. Abrams provided, notwithstanding his overstated credentials.

---

[3] SA Altenburg indicated that the specific representations by Mrs. Woolf and Mr. Gengler in the infomercial were "too vague to be defined." Meanwhile Chad Miller testified that David Gengler's statement in the infomercial was "100% verified." There was no other evidence offered to call in to question the accuracy of a single student testimonial or mentor biography. Rather, the government treated these as false, without offering any evidence that they were.

[4] Mr. Abrams acknowledged that he never "made his living in the market," and that he never informed his mentees of this fact, nor did he ever inform TMTT or anyone associated with TMTT that despite making significant returns as a mentor, he was not investing enough in the market for those returns to support his expenses.

3

The government failed to provide a scintilla of evidence regarding the efficacy and accuracy of the representations of the actual TMTT educational program. In the first case of its kind, a fraud in the inducement theory of criminality, the government presented no evidence and offered no testimony challenging the product at the heart of the alleged fraud. The government did not present an expert or otherwise demonstrate that the prices paid for the various TMTT packages were inconsistent with their market value. While much was made of the prices of the course packages, there was no evidence that the courses were worth anything less than the price paid.

Witness after witness after witness for the government testified that they received a tremendous amount of information and written material and that they learned a great deal from the TMTT fulfillment seminar and the advanced courses.[5] No evidence was offered to call into question the efficacy of the TMTT program, let alone that it was a sham product or anything less than what it was purported and sold as.

The government also failed to explain or define the sales terms it alleged that Mrs. Woolf and Mr. Gengler misused. Never once was a "successful" trader or a "professional" trader defined, rather the government simply infused its own definition of these broad generic terms and then turned logic on its head to ask witnesses to assume that neither Mrs. Woolf or Mr. Gengler were in fact "successful or "professional." Despite hundreds of thousands of dollars of successful trading and being paid commissions for trading for others, Mrs. Woolf and Mr.

---

[5] Many of the witnesses the government cherry picked for trial indicated that they had not completed the courses or done the work required, yet none was able to provide any evidence that the educational program purchased was worth anything less than what they paid, nor was a single witness able to testify that the TMTT program did not work as described in "reducing their risk" and helping them make more successful trades in the market.

Gengler were portrayed by the government as charlatans.  As the Court is well aware from the evidence presented, the facts are much different than the government attempted to portray them.[6]

The facts established that both Mr. Gengler and Mrs. Woolf had periods of tremendous success.  The government attempted to hide the successes by focusing on tax returns and the lack of options trading on the Schedule D in those individual returns.  Yet, remarkably the government never brought in an expert to testify that options income was required to be recorded on the Schedule D.  The reason no expert was presented, was that no expert could testify to that premise because it is not true.

Time and time again, the government made arguments or presented questions regarding the accuracy of the statements by either Mr. Gengler or Mrs. Woolf, but never once was evidence offered that the statements made were "misstatements."  When pressed, government agents would indicate that they did not investigate, could not locate or did not posses evidence to support various statements by Mr. Gengler, Mrs. Woolf or TMTT, but no evidence was presented to show that the alleged misstatements were in fact misstatements.

Intent to deceive and intent to defraud are not synonymous.  Deceive is to cause to believe the false or mislead.  Defraud is to deprive of some right, interest, or property by deceit.  *United States v. Yermian*, 468 U.S. 63, 104 S.Ct. 2936 U.S., 1984, at 73 FN 12.  While the government alleges that the entire company was a plan to sell something other than what was advertised, there is no evidence in this record to support such an allegation.

---

[6] As the Court is aware from the evidence presented, Linda Woolf made over $400,000 in trading commissions in the two years preceding her association with TMTT, proven by her bank records.  Mr. Gengler held professional licenses and made his living as a stock broker prior to his work as a TMTT speaker.  Just like the significant profits Mrs. Woolf made trading for others, Mr. Gengler a made significant profits for himself and his clients in his capacity as a trader  By any definition, these qualifications entitled both Mr. Gengler and Mrs. Woolf to the title of "professional" trader.

On the contrary, weather it is students or employees, government witnesses or defense, the record is clear that each and every student who purchased a course, software or some aspect of the Teach Me To Trade product line, received exactly that product they bargained for.

### THERE IS NO EVIDENCE OF THE EXISTENCE OF A CONSPIRACY AND NO EVIDENCE THAT EITHER DAVID GENGLER OR LINDA WOOLF KNEW OR PARTICIPATED IN A CONSPIRACY

The elements of a conspiracy to commit wire and mail fraud are: 1) the existence of an agreement to commit wire/mail fraud, 2) willing participation by the defendant, and 3) an overt act done by one of the defendants in furtherance of the agreement.  *United States v. Kennelly,* 84 Fed.Appx. 278, 280 (4th Cir. 2003), *cert. denied,* 541 U.S. 1018 (2004) (citing *United States v. Edwards,* 188 F.3d 230, 234 (4th Cir. 1999)).  The government has utterly failed to present evidence of any kind to prove an agreement to defraud between Ms. Woolf and Mr. Gengler and the Teach Me to Trade company, management, or any employee or independent contractor.  "As for each conspirator the prosecution must show the existence of an agreement to conspire and that the accused knowingly participated in it." *United States v. Barrera*, 547 F2d 1250, 1256 (5th Circuit 1977).

First the government must prove there is a conspiracy, and then the government must prove that Ms. Woolf and Mr. Gengler *knew* of the alleged conspiracy.  *United States v. Falcone,* 311 U.S. 205, 209-210 (1940).  "Those having no knowledge of the conspiracy are not conspirators." *Id.* at 210.

As the evidence at trial demonstrated, the government never proved a conspiracy to defraud student consumers, let alone that Mrs. Woolf or Mr. Gengler knowingly entered such a conspiracy.  Rather, as described in detail in the Court pleadings, the government showed only that TMTT existed, employed hundreds of people, and that they had thousands of students

6

around the country who paid to learn about the stock and real estate markets.  No one individual testified that he or she knew of a conspiracy or participated in a conspiracy.  To the contrary, the witnesses who testified at trial consistently stated that TMTT and its employees and contractors were all part of a legitimate business engaged in sale of a legal product.  The government presented no evidence - because none exists - that Mr. Gengler or Mrs. Woolf was ever involved in anything more than teaching seminars and selling courses.

The employees and contractors that were associated with TMTT were not part of a conspiracy to defraud, because there was no such conspiracy.  Apparently acknowledging this factual infirmity in their case, the government attempted to use innuendo and hyperbolic exaggeration to infer impropriety where none exists.  Rather than focus on the fact that every student received the exact product sold, be it mentors, courses or software, the government instead used the hypothetical "if you knew that Linda Woolf (or David Gengler) was not a successful trader, would you have bought" questions to make it appear that there was fraud, when in fact, no fraud existed.

In this case, there is no evidence of Ms. Woolf or Mr. Gengler's "willing participation" in any conspiracy.  That element requires that the government prove, beyond a reasonable doubt, that there was a common agreement to violate the law and that there was a meeting of the minds to commit an unlawful act.  *United States v. Parker,* 839 F.2d 1473, 1478 (11th Cir. 1988).  "Without evidence showing or tending to show a meeting of the minds to commit an unlawful act, the convictions [for conspiracy] cannot stand." *Id.*

Furthermore, more than mere knowledge of a conspiracy, or association with its participants, is required.  *Id.*  As the Fourth Circuit has recognized, in conspiracy cases, the government must prove that each defendant "acted knowingly and willfully with the specific

7

intent to deceive." *Kennelly,* 84 Fed.Appx. at 280 (citing *United States v. Schnabel,* 939 F.2d 197, 203 (4th Cir. 1991)). The government must prove that Ms. Woolf and Mr. Gengler acted with the "conscious knowing intent to defraud." *Krenning,* 93 F.3d at 1264 (citing *United States v. Kreimer,* 609 F.2d 126, 128 (5th Cir. 1980). No such proof has been adduced here.

In *United States v. Wrehe,* 628 F.2d 1079 (8th Cir. 1980), the Eighth Circuit ruled that Ms. Wrehe "is entitled to a judgment of acquittal on the substantive counts" because she "took no action that would foreseeably result in the use of the mails or of interstate wires for purposes of executing a fraudulent scheme. Indeed, she took no significant action at all." *Id.* at 1085. It went on to find that an alternative ground for reversing her conviction on the mail and wire fraud counts was "that she lacked the requisite criminal intent to defraud. Her participation in the substantive affairs of Western Capital was so minimal that the jury cannot be permitted to infer that she harbored criminal intent to defraud." *Id.*

In this case, the government's evidence falls far short of proving beyond a reasonable doubt that any party entered into any agreement of any kind to commit illegal acts. The various TMTT parties, including Ms. Woolf and Mr. Gengler, were not aware that various claims were untrue, if in fact they were untrue, and the vague and slight evidence adduced by the government is insufficient to prove an agreement of *any* sort, let alone an agreement to commit criminal acts.

## THERE IS NO EVIDENCE OF WIRE FRAUD

As stated in Defendants' Memorandum of Support of Motion for Judgment of Acquittal, in addition to the *mens rea* requirements, the elements that must be proven to sustain a conviction for wire fraud are:

> First: That the defendant devised a scheme to defraud;
>
> Second: that the U.S. wires were used in furtherance of that scheme; and

8

>   Third: that a material statement and/or omission was made in furtherance of the scheme.

(*See* Horn III, <u>Carl Horn's Federal Criminal Jury Instructions for the Fourth Circuit §2.61(2002 Ed.)</u> and see *Neder* v. *United States,* 527 U.S. 1 (1999) (materiality is an element of federal mail fraud, bank fraud and wire fraud statutes).

In order to establish the first element, the government must prove beyond a reasonable doubt that the defendants acted with the specific intent to defraud. *United States v. Godwin,* 272 F.3d 659, 666 (4th Cir. 2001), *cert. denied,* 535 U.S. 1069 (2002); *United States v. Ham,* 998 F.2d 1247, 1254 (4th Cir. 1993). It must prove that a particular defendant knowingly and intentionally participated in the execution of the fraudulent scheme. *United States v. Perkal,* 530 F.2d 604, 606 (4th Cir.), *cert. denied,* 429 U.S. 821 (1976). The government must also prove that the representations were false and that the defendant knew that representations that were made were, in fact, false. *United States v. Rabinowitz,* 327 F.2d 62, 76 (6th Cir. 1964) ("Even if the statements complained of were false, *defendants must have known them to be false* and they must have intended to defraud in order to be found guilty") (emphasis added).

As the Court is well aware, there is nothing in this record to indicate a specific intent to defraud. Quite the opposite was brought out in the testimony of the six students who testified as to counts 2, 3, 8, 10, 13 and 14. Each and every one of those students testified that they received each and every course they purchased. Moreover, not a single student for the substantive counts testified that they received anything less than what they had purchased, thus eviscerating the government allegation that either Mr. Gengler or Mrs. Woolf specifically intended to defraud any of these students. Just as with the lack of evidence, certainly not evidence beyond a reasonable doubt, of the representations being misrepresentations, there is no indication that

9

either Mrs. Woolf or Mr. Gengler made a misrepresentation to any of these students.[7] There is no evidence to support the allegation that either Mr. Gengler or Mrs. Woolf made a misrepresentation at the seminars attended by the students, or that Mr. Gengler and Mrs. Woolf believed that the students were going to get anything other than exactly what they paid for. Not surprisingly, each of these students did receive exactly what they paid for and there is no evidence to the contrary.

"Puffery," the sort of optimism or exaggeration that often accompanies attempts to sell products, cannot constitute the requisite false statement or false representation under the mail fraud statute. *See also Faulkner v. United States,* 157 F. 840, 841 (5th Cir. 1907) (defendant's conviction for engaging in mail fraud/scheme to defraud reversed; "[I]f the advertisement contains some exaggerations that does not constitute a scheme to defraud. . . . [T]he advertisements being substantially true does not sufficiently tend to show a scheme to defraud to make it a question to be submitted to the jury"); *United States v. Thaw,* 353 F.2d 581, 584-585 (4th Cir. 1965) (in a mail fraud case, "the judge having stated that he would charge specifically on 'puffing' should have done so," but because "the substance of such a charge was covered in the instructions given," failure not reversible error).

The evidence adduced in the government's case showed that as a matter of law, the courses that were sold by TMTT cannot be seen as part of a scheme to defraud, because under the "bespeaks caution" doctrine, they were sold with contracts that contain the necessary cautionary language. As demonstrated during the government's case, the sales contracts, course presentations and course materials were filled with cautionary language, including the

---

[7] None of the substantive count students attended the videotaped seminars, thus there is the unanswered question of what exactly was said at the seminars years before.

enumeration of risk factors. As a matter of law, such documents clearly put any potential TMTT student on notice.

Under the "bespeaks caution" doctrine, the cautionary language negates the materiality of any alleged misrepresentations. For example, in *Gasner, supra*, the offering circulars at issue there were alleged to have been misleading and to have contained material misrepresentations and omissions. The Fourth Circuit affirmed the dismissal of that case, based, in part, on the "bespeaks caution" doctrine which recognizes that promotional materials that contain extensive cautionary language cannot form the basis of a fraud. *See, e.g., Cohen v. USEC, Inc.,* 70 Fed.Appx. 679, 686 (4th Cir. 2003); *Gasner v. Board of Supervisors of the Town of Dinwiddie, Virginia,* 103 F.3d 351, 358-360 (4th Cir. 1996).

The course materials, course presentations, marketing materials and the actual contract students signed to purchase advanced courses were "replete with cautionary language," warning of the risks inherent in investing in the stock market and the clear language of the contract indicates that "No representation is being made that any of the accounts or trades mentioned in this presentation or educational materials will or is likely to achieve profits or losses similar to those shown."

Under the "bespeaks caution" doctrine, therefore, neither Ms. Woolf nor Mr. Gengler can be held liable because the "total mix" of information made available to potential students warned them of the potential risks. Indeed, "even lies are not actionable" unless the lie is something that alters the total mix of information available to the reasonable investor. *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 617 (4th Cir. 1999); *see also Lowinger v. Johnston*, 2007 WL 2344882 at *6 (W.D.N.C. 2007) (same).

Moreover, in considering whether Mrs. Woolf or Mr. Gengler has done anything, other than in good faith, the Court must consider the entire milieu of the TMTT created marketing materials, and internal guidance vis a vis success rates of its students. Here, every member of the TMTT organization, as well as the multiple independent contractors, relied on the advice and counsel of the in house counsel of TMTT and the government offered no evidence to the contrary. In fact, it was clear from the presentation of the government case that every employee and contractor associated with TMTT relied on the information that came from corporate.

There were no materials or information that was disseminated to Mrs. Woolf, Mr. Gengler and others, that did not come through the chain of command from the marketing and legal departments.

## **CONCLUSION**

For all of the reasons discussed above and in the Defendants' Joint Memorandum In Support of Motion Of Judgment of Acquittal, this Court should dismiss Count 1 against Ms. Woolf and Mr. Gengler, Counts 2, 3 and 8 against Ms. Woolf, and Counts 10, 13 and 14 against Mr. Gengler.

Respectfully submitted,

/s/ Benjamin G. Chew
Benjamin G. Chew, Esq.
Virginia Bar No. 29113
Ahmad Nassar, Esq.
Christina Sarchio, Esq.
Attorneys for Defendant David Gengler
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6482
E-mail: bchew@pattonboggs.com
E-mail: anassar@pattonboggs.com
E-mail: csarchio@pattonboggs.com

/s/ Claire Morris Clark
Claire Morris Clark, Esquire
Virginia Bar No. 73238
Attorney for Linda Woolf
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, D.C. 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177
cclark@schertlerlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Report was served via ECF to counsel for the United States, G. Derek Andreson, Steven Mellin and Jessica Nuzzelillo-Moran, Assistant United States Attorneys, 2100 Jamison Avenue, Alexandria, VA  22314 on the 11th day of June, 2009.

                                                   /s/ Claire Morris Clark